Coös,
April 1, 1902.

### REYNOLDS, *Adm'x,* v. BURGESS SULPHITE FIBRE CO.

The plaintiff in an action for personal injuries may maintain a bill of discovery to compel the production of fragments of broken machinery in the possession of the defendant as owner, for the purpose of making an inspection of them as a material element in the proper preparation for a trial of the suit at law.

Such relief cannot be denied for the reasons that the discovery and inspection sought would constitute an infringement of the defendant's right of property, that an examination of the fragments is desired for the purpose of enabling witnesses to testify as experts, and that the action at law is brought to recover damages for a personal tort; nor do the statutes removing the disability of parties as witnesses, authorizing the taking of depositions before trial, and empowering the court to order a view, furnish such full, complete, and adequate means of obtaining information concerning the property in the defendant's possession as to oust the court of its equitable jurisdiction to entertain a bill of discovery for the accomplishment of that purpose.

BILL IN EQUITY. The bill alleges that the plaintiff has commenced an action at law against the defendants to recover damages for negligently causing the death of the plaintiff's intestate by furnishing him for use in his employment improper, unsuitable, and dangerous machinery; that on April 9, 1899, while the intestate was in the employ of the defendants, he was killed by falling against the governor of an engine; that the engine gave indications, by an unusual noise, that it was in a defective condition, and shortly afterward the strap on its connecting rod broke and caused the connecting rod to break through the outer casing with a loud crash, and thereby caused the intestate's fatal fall; that the broken pieces of the strap are in the defendants' possession; that to properly prepare the plaintiff's action at law for trial it is necessary that these pieces should be examined by the plaintiff's attorneys, and also by competent persons, with a view of testifying; and that the defendants, though requested, have refused to permit such examination. The prayer is for a discovery of the pieces of the broken strap, and for an inspection of the same by the plaintiff's attorneys and such other persons as she may desire.

The defendants filed a demurrer, which was sustained *pro forma* by *Pike*, J., at the April term, 1901, of the superior court, subject to the plaintiff's exception.

*Crawford D. Hening*, for the plaintiff.

*Chamberlin & Rich* and *Orville D. Baker* (of Maine), for the defendants.

CHASE, J. Whatever may have been the fact prior to 1842 (Laws 1832, *c.* 89, *s.* 9; *Dover* v. *Portsmouth Bridge*, 17 N. H. 200), there can be no doubt that ever since that date courts of this state have possessed full equity powers in respect to discovery. R. S., *c.* 171, *s.* 6; G. S., *c.* 190, *s.* 1; G. L., *c.* 209, *s.* 1; P. S., *c.* 205, *s.* 1. In the grant of equity powers by the last-named statute, which is now in force, discovery is specially mentioned. The jurisdiction of the court over the subject generally is not questioned, but it is said that this case does not fall within the jurisdiction. In considering the reasons that have been offered in support of this position, it is necessary to have in mind the origin, purpose, and general nature of this remedy.

"The common law laid down as a maxim, *Nemo tenetur armare adversarium suum contra se;* in furtherance of which principle it generally allowed litigant parties to conceal from each other, up to the time of trial, the evidence on which they meant to rely, and

would not compel either of them to supply the other with any evidence, parol or otherwise, to assist him in the conduct of his cause." Best Ev., s. 624; 1 Gr. Ev., s. 329. A different rule grew up in equity. The defendant there was obliged to answer under oath the allegations of the bill, and might be compelled to produce for inspection by the plaintiff documents that were in the defendant's possession and control and were material to the issues involved in the suit. In such cases the discovery was incident to the equitable relief sought. But it was not limited to the issues arising in suits in equity. "Many cases existed in which the plaintiff had a legal title, or a legal right, or was pursuing a legal remedy, but wherein no redress could be actually obtained, simply because the plaintiff's evidence either rested in the breast of the defendant, or consisted, in whole or in part, of documents in the defendant's possession. Hence there was failure of justice at common law, and hence there arose the equitable remedy of bills for discovery, which was made use of simply for the purpose of assisting or supplementing the plaintiff's remedy at common law." Bisp. Eq. (6th ed.), s. 557; 2 Sto. Eq. Jur., ss. 1484, 1485; 1 Pom. Eq. Jur., ss. 191, 195. The law excepted from the testimony which a party might be compelled to furnish against himself in this way, testimony tending to convict him of a violation of the criminal law, or to subject him to a penalty or forfeiture; also communications between him and his attorney relating to the matters in suit, and, if a public officer, testimony a publication of which would be prejudicial to the community. With these exceptions, a party could be compelled "to discover and set forth upon oath every fact and circumstance within his knowledge, information, or belief," and to produce and allow his adversary to inspect and copy every document in the party's possession material to the other's case. Ad. Eq., c. 1.

The defendants say that this case is not within this equitable jurisdiction, because the discovery and inspection sought is of articles of personal property belonging to them, in which the plaintiff has no right of property or possession. The gist of the action at law, in aid of which this suit was brought, is the negligence of the defendants in furnishing the plaintiff's intestate, their employee, with improper, unsuitable, and dangerous machinery for use in his employment. It is a necessary inference from the allegations of the bill that the "improper, unsuitable, and dangerous" element in the machinery existed in the strap on the connecting rod of the engine. This broke and, it is alleged, caused the intestate's death. The alleged unsuitableness of the strap may be due to inadequacy of size, error in form, imperfection in construction, or inferiority of the materials from which it was made. An inspection of the frag-

ments will evidently aid in determining whether there was one or more of these defects in it, and if so, which. As matters of proof, the fragments would at least be ancillary to other testimony on the point. 3 Gr. Ev., *ss.* 328, 329; Best Ev., *s.* 200. They may be the most reliable and weighty testimony, one way or the other. The bill alleges that the plaintiff cannot properly prepare her action at law for trial without an inspection and examination of them. By reason of the demurrer, this allegation must be taken as true. Unless the equitable remedy of discovery has been superseded by the provision of some plain, adequate, and complete remedy at law, or is not applicable to a case of tort like that alleged in the plaintiff's action at law,— points that are hereinafter considered,— it is certain that the defendants through their officers and agents might be compelled in a suit like the present one to discover the form in which the strap was constructed, the character of the workmanship by which and the materials from which it was made,— in short, all the facts within their knowledge, information, or belief tending to show that it was defective. If they had in their possession a plan of the strap or of the broken pieces, they might be compelled to produce it for examination by the plaintiff. Why, then, may they not be compelled to produce the broken pieces themselves? Two reasons are suggested: one — positive and, if well founded, substantial — that the defendants' right to possess and control the property, growing out of their ownership of it, cannot be infringed in this way ; and the other — negative and not applying to the merits of the question — that there is no precedent for a discovery and inspection of such property. It must be admitted that the defendants' right of property in the broken strap will be interfered with to some extent if they are required to produce it and allow the plaintiff and others to examine it. But such interference will not differ in kind or degree from that which occurs when a party is required to produce his letters, deeds, plans, other documents, or books, for inspection. The rights of the defendants arising from the ownership of the strap are no more sacred than would be their rights arising from the ownership of a plan of the strap, if they had one. The infringement of property rights in such cases is justified upon the ground that it is necessary to the administration of justice. Such necessity is alleged by the plaintiff and admitted by the defendants. It is apparent that an examination of the strap will afford a better means of ascertaining the truth in respect to its suitableness or unsuitableness for the office it was to perform than any possible description or plan of it could afford ; and the necessity for an inspection of it is correspondingly greater than the necessity for an oral description or a plan.

The following cases illustrate the application that has been made of the doctrine of discovery in aid of actions at law, in respect to documents and books: —————— v. *Corporation of Exeter*, 2 Ves. 620; *Moodalay* v. *Morton*, 1 Bro. C. C. 469; *Burrell* v. *Nicholson*, 1 Myl. & K. 680; *Storey* v. *Lennox*, 1 Myl. & C. 523; *Smith* v. *Beaufort*, 1 Hare 507; *Chadwick* v. *Bowman*, L. R. 16 Q. B. Div. 561; *Peck* v. *Ashley*, 12 Met. 478. The documents, a discovery of which was sought in these cases, were not muniments of title, or documents containing evidence bearing upon an accounting between the parties, but were letters, books, and papers supposed to contain evidence in support of the plaintiff's case in actions at law. Indeed, no cases have been found in which it is held that the right of discovery in respect to documents depends upon the fact that the documents are muniments of title to property in dispute in the action at law, or that they are relevant to an accounting between the parties sought in such action. The right to the discovery of documents, etc., is as extensive as the right to discovery by oral testimony, and depends upon the same principles.

*Marsden* v. *Panshall*, 1 Vern. 407, decided in 1686, is an authority that discovery may be had of personal property other than documents, etc. The plaintiff in the suit, a clothier, entrusted clothes to B for sale in London, and B pawned them to the defendant. The defendant confessed that B pawned clothes to him, but did not admit that they were the plaintiff's. The report says: " Sergeant Maynard this day moved for the plaintiff that the defendant might be ordered to let the plaintiff, with two or more persons present, have a sight of the clothes pawned, . . . which was ordered accordingly; the meaning of which was, and so it was taken by the court, that the plaintiff should thereby be enabled to bring an action at law." The defendants say that this was not an order compelling inspection of the defendant's property, as the title was alleged to be in the plaintiff, and this was not denied. But the title to the clothes was the fact to be determined in the action at law. It might turn out that they belonged to the defendant. *Macclesfield* v. *Davis*, 3 Ves. & B. 16, is to the same effect. These cases must be regarded as authorities for the plaintiff in this action.

Occasion for the use of the remedy for the discovery of chattels and for their inspection has undoubtedly arisen more frequently in patent cases than in others, but the remedy itself has no special features peculiar to such cases. Their peculiarity consists in the manner of affording relief. " It may be by an interlocutory injunction in the first instance. But much more frequently, unless the case is of the strongest possible kind, it is by merely putting the matter in train for determination of the right at law, and then at the hearing a perpetual injunction is granted, upon the plaintiff

succeeding in the action at law." *Patent Type Founding Co.* v. *Walter*, Johns. V. C. 727, 730. It should be noted in this connection, also, that the same principles govern discovery, whether it be invoked in aid of other issues involved in the suit in equity, or be invoked independently in aid of an action at law. *Drake* v. *Drake*, 3 Hare 523 ; *Lyell* v. *Kennedy*, 8 App. Cas. 217. ; Wig. Dis. 123. If discovery of personal chattels may be had in the former case, it may be had in the latter.

In *Bovill* v. *Moore*, 2 Coop. C. C. 56, Lord *Eldon*, in 1815, said : " There is no use in this court directing an action to be brought if it does not possess the power to have the action properly tried. The plaintiff has a patent for a machine used in making bobbin lace. The defendant is a manufacturer of that article, and, as the plaintiff alleges, he is making it with a machine constructed upon the principle of the machine protected by the plaintiff's patent. Now the manufactory of the defendant is carried on in secret. The machine which the defendant uses to make bobbin lace, and which the plaintiff alleges to be a piracy of his invention, is in the defendant's own possession, and no one can have access to it without his permission. The evidence of the piracy at present is the bobbin lace made by the defendant. The witnesses say that the lace must have been manufactured by the plaintiff's machine, or by a machine similar to it in principle. This is obviously in a great measure conjecture. No court can be content with evidence of this description. There must be an order that the plaintiff's witnesses shall be permitted, before the trial of the action, to inspect the defendant's machine and to see it work." It is true, as the defendants in this case say in their brief, that the order was placed " upon the general doctrine that without such inspection the case could not be properly tried." As has been seen, the remedy for discovery in aid of actions at law was introduced for the very purpose of securing proper trials therein. The application of the remedy to the case was in accordance with the general rule. An action for infringing the patent was brought,— probably by direction of the court after compliance with this order,— and was tried by a jury. *S. C.*, 2 Marsh. 211. *Browne* v. *Moore*, 3 Bli. 178, was a similar case, in which the plaintiff was permitted to inspect the machine which he alleged infringed his patent. *Russell* v. *Cowley*, Web. Pat. Cas. 457, was a bill for discovery as to the defendant's infringement of the plaintiff's patent right for making iron tubing, and for an accounting. The plaintiff's counsel acceded to terms proposed by the other side that an account should be kept and two persons appointed on each side, as inspectors of the defendant's works, for the purpose of giving evidence at the trial of an action at law to be begun forthwith. An order was made ac-

cordingly, and an action was thereupon brought, at the trial of which the inspectors testified, giving expert testimony. The defendants question the authority of this case on the ground that the order of inspection was made with the consent of the parties. Whether the consent was of the nature which the defendants infer it was, is at least doubtful. It may have resulted from a consciousness that the court had power to make the order sought, and may have been given merely to expedite the proceedings. The case is cited as a precedent for the jurisdiction of the court to order an inspection in such cases in *Patent Type Founding Co.* v. *Lloyd,* 5 H. & N. 192. In *Morgan* v. *Seaward,* Web. Pat. Cas. 167, an order of inspection of paddle-wheels and machinery was ordered. *Patent Type Founding Co.* v. *Lloyd* was an action at law, in which the plaintiffs claimed to own a patent for type, the novelty being the use of a large proportion of tin, which made the type hard, tough, and enduring. They moved, under 15 and 16 Vict., *c.* 83, *s.* 42, for leave to inspect the defendant's type, and if necessary to take specimens for analysis, in order that they might produce evidence of the analysis at the trial. The court, being of the opinion that the statute did not give them authority to grant an order for specimens, denied the motion. 5 H. & N. 192. A few days later the plaintiffs filed a bill in equity praying for an injunction and for liberty to inspect the type and take samples. Liberty was granted,— the parties to make the inspection being named in the order,— and the defendant was ordered to furnish not exceeding four ounces of type for analysis. *Patent Type Founding Co.* v. *Walter* (the defendant in one of the two actions reported in 5 H. & N. 192), Johns. V. C. 727.

There is also a line of cases in which an inspection of real estate has been ordered. *Lonsdale* v. *Curwen,* 3 Bli. 168; *Walker* v. *Fletcher,* 3 Bli. 172; *East India Co.* v. *Kynaston,* 3 Bli. 153; *Attorney-General* v. *Chambers,* 12 Beav. 159; *Lewis* v. *Marsh,* 8 Hare 97. In a note to the first-named case, Bligh, the reporter, says: "The practice in courts of equity of granting orders for inspection of mines, machines, etc., is well settled. But no notice has ever been taken of the point in the books of practice, and no authorities are to be found upon the subject in the reports of cases in equity, except in the case in the court below of *Kynaston* v. *East India Co.,* as reported 3 Swan. 248, and upon appeal to the house of lords, now reported in the text, and which case as it relates to warehouses is distinct from former authorities and new in its kind. Two cases of orders for inspection extracted from the register's book are therefore subjoined,"— being *Walker* v. *Fletcher* and *Browne* v. *Moore, supra,*— the former providing for an inspection of mines, and the latter, as has already been stated, for an in-

spection of machinery in a case for an infringement of a patent. Story, after speaking of the defect in the administration of justice in courts of common law, arising from their want of power to " compel the production of deeds, books, writings, and other things " material to the issues on trial, says the defect is " remediable in courts of equity, which will compel the production of such books, deeds, writings, and other things." 2 Sto. Eq. Jur., ss. 1484, 1485. See, also, 1 Pom. Eq. Jur., s. 191. It would seem that these authors had in mind something besides books and documents.

One reason suggested by the defendants why these cases do not support the plaintiff's claim is because, as they say, in all of them the plaintiffs set up an interest in the property to be inspected. As has been already observed, it is not perceived how this affects the question. The inspection was ordered in each case while the interest was undetermined, and there was no presumption that it would be determined in favor of the plaintiffs. If determined in favor of the defendants, the inspection would in fact be of their property, the same as in the cases cited in which letters and other documents were subjected to inspection. The defendant in *East India Co.* v. *Kynaston* had no interest whatever in the warehouse, for the examination of which he sought an order. The facts of this case, at least, do not support the defendants' contention. It is also to be noticed that none of the cases places the right of discovery upon this circumstance. The right, as in all other cases, depends upon the necessity for discovery in the administration of justice.

To warrant discovery, it is not necessary that there should be absolutely no means of proving the plaintiff's case without it. In *Bovill* v. *Moore*, there were witnesses who would say that the lace made by the defendant was manufactured by the plaintiff's machine or one constructed on the same principle. The plaintiff had some evidence to sustain his case, but it was not satisfactory. A party may maintain a bill for discovery, " either because he has no proof, or because he wants it in aid of other proof." 2 Sto. Eq. Jur., s. 1483; Mer. Eq., ss. 853, 854. " When the plaintiff has any case to make out, he has a right to discovery of anything that may assist him in proving his case, or even the smallest tittle of it." *Jenkins* v. *Bushby*, 35 L. J. Ch. 400.

The defendants cite three New York cases in support of their contention — *Kennedy* v. *Nichols*, 68 N. Y. Supp. 1053, *Ansen* v. *Tuska*, 1 Rob. Sr. Ct. 663, and *Cooke* v. *Company*, 29 Hun 641. In the first case provisions of the code and of general rules of practice adopted under the authority of the code, relating to discovery upon a motion in an action at law, are construed, and what is said respecting discovery is based upon *Ansen* v. *Tuska*. That

was an action at law in which there was a motion under the code,. by the defendant, for the production of the goods involved in the. action and an inspection of them by persons to be selected by him to enable them to testify as experts.   In denying the motion, the court refer to the equitable remedy of discovery, and say in general terms that there is no authority or principle for discovery such as was asked for in the case.    There is no discussion of the principles, and no authorities are cited relating to the matter.   In *Cooke* v. *Company*, the question is disposed of without an examination of authorities.    The reasons given for the holding are that a discovery and inspection of the personal property of an adverse party would be a usurpation of authority to search and inspect his private premises, and that discovery of books and documents. is discretionary with the court, and is exercised only where the party applying has some right or interest in the books and documents.    While the defendant may be compelled to disclose whether he has the article in his possession and control, and if he has to produce it for inspection, the procedure is not a search in the sense indicated.   It affords no just cause for the fear expressed by the court that " the dwellings of our citizens will be of small security to them if they may be invaded by their enemies and searched for articles of personal property to be inspected under an order of a court."   Neither does the right of discovery of books and documents depend upon the discretion of the court (Wig. Dis. 51 ; *Drake* v. *Drake*,. 3 Hare 523) ; nor upon the party's having some right or interest. in them other than as items of testimony in his favor.   Wig. Dis.. 209, 210, 256 ; Kerr Dis. 202 ; 2 Sto. Eq. Jur., s. 1490 ; 1 Pom. Eq. Jur., *s.* 205 ; *Attorney-General* v. *Thompson*, 8 Hare 106 ; *Arnold* v. *Water Co.*, 18 R. I. 189.   The slight infringement of the. right of property that is involved in an inspection of it under an order of a court of equity is justified by " due process of law " or " the law of the land," and is in no sense a violation of the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

A consideration of the origin of the equitable remedy for discovery, and of its nature and purpose, leads to the conclusion that. it may be employed to compel the production of personal chattels, as well as books, deeds, letters, and other documents, for inspection and examination, in aid of an action at law ; and the foregoing cases confirm this conclusion.

The defendants' second objection is because the discovery and. inspection are sought for the purpose of having the broken strap examined by persons with a view of enabling them to testify as experts in the action at law.   This objection must also be overruled.   It is evident that expert testimony may be competent upon

the issue to be tried, whether it relate to the form of the strap, the manner of its construction, or the character of the materials from which it was made. The defendants have ample opportunity to procure such testimony. Justice requires that the plaintiff shall also have an opportunity to have the strap examined by persons in whose skill and scientific knowledge she has confidence. There cannot be a fair trial of the case unless such opportunity is given to the plaintiff. Indeed, it may be that she cannot establish her right — if she have one — without having the opportunity. The necessity for it is alleged, and admitted by the demurrer. The object of the plaintiff's bill is the discovery of testimony for use at the trial, but the discovery must necessarily take place prior to the trial. In *Marsden* v. *Panshall, supra*, the suit in equity was begun before the action at law, in order that "the plaintiff should thereby be enabled to bring an action at law." See, also, *Bovill* v. *Moore, supra*; *Heathcote* v. *Fleete*, 2 Vern. 442 ; *Morse* v. *Buckworth*, 2 Vern. 443 ; 2 Sto. Eq. Jur., s. 1495; 1 Pom. Eq. Jur., s. 197. In *Russell* v. *Cowley, Patent Type Founding Co.* v. *Walter, supra*, and apparently in the other patent cases cited, the inspection was ordered to enable witnesses to give expert testimony at the trial of the actions at law. See, also, *Burrell* v. *Nicholson*, 1 Myl. & K. 680 ; *Arnold* v. *Water Co.*, 18 R. I. 189.

The defendants place much reliance upon their third point, viz., that the equitable remedy for discovery cannot be invoked in aid of an action at law for a personal tort. They do not question, and in view of the authorities cannot question, the proposition that discovery may be had in aid of actions of tort relating to property, such as trover, detinue, trespass, waste, etc. *East India Company* v. *Evans*, 1 Vern. 307 ; *Marsden* v. *Panshall*, 1 Vern. 407 ; *Heathcote* v. *Fleete*, 2 Vern. 442 ; *Morse* v. *Buckworth*, 2 Vern. 443 ; *Sloane* v. *Hatfield*, Bunb. 18 ; *Taylor* v. *Crompton*, Bunb. 95 ; *Macclesfield* v. *Davis*, 3 Ves. & B. 16 ; *Burrell* v. *Nicholson*, 3 B. & Ad. 649,—1 Myl. & K. 680. But they say that a defendant cannot be called upon to implicate himself directly or indirectly in a personal tort because it would tend to show moral turpitude, and so is inconsistent with principles of natural justice. It is true, as has already been stated, that a person cannot be called upon to furnish testimony in aid of such an action or any other which tends to show that he has committed a crime or misdemeanor, or that he is liable to a penalty or a forfeiture of property. Testimony of this kind is excepted from the operation of the remedy, in deference to the fundamental law that no subject shall be compelled to accuse or furnish evidence against himself in a criminal proceeding. It is said also that this equitable jurisdiction will not be exercised in controversies involving moral turpitude and arising from acts clearly

immoral, even though brought for the purpose of recovering pecuniary compensation. 1 Pom. Eq. Jur., *s.* 197; 2 Sto. Eq. Jur., *s.* 1494; Wig. Dis. 83; and authorities cited in notes. If this be so, this case is not thereby excluded from the jurisdiction; for, so far as appears, it does not involve moral turpitude or immoral conduct on the part of the defendants. They are charged with negligence, merely, consisting of a failure to perform their implied contractual obligation to provide the plaintiff with suitable machinery for the performance of his duties, or a suitable place in which to work. Although the action at law is in form tort, it is in fact based upon the failure to perform a duty arising from an implied promise. It is as distinguishable in this respect from an action of trespass to the person, as an action against a common carrier for the loss of goods in his custody is distinguishable from an action for setting fire to one's house. *Morse v. Buckworth,* 2 Vern. 443.

If the case is excepted from the equitable jurisdiction pertaining to discovery, it must be for some other reason than that a discovery would show moral turpitude or immoral conduct on the part of the defendants; and none has been suggested excepting an absence of precedents supporting the jurisdiction. The plaintiff cites and relies upon *Macaulay v. Shackell,* 1 Bli. N. S. 96, as an authority in her favor upon this point. Macaulay brought an action at law against Shackell and others for libel, and the defendants pleaded the truth of the alleged libelous matter, and in aid of their defence filed a bill for discovery and a commission for examining witnesses abroad. Macaulay filed a demurrer to the bill, which was overruled by Lord *Eldon,* Chancellor, and Macaulay appealed to the house of lords, where the judgment of the lord chancellor was affirmed, so far at least as it granted a commission for taking testimony abroad. There seems to be a difference of opinion regarding the scope of the decision, some holding that it required Macaulay to answer the bill and make the discovery sought, and others that it only granted a commission to take testimony abroad. See Redfield's note to 2 Sto. Eq. Jur., *s.* 1494. The decision was rendered in 1827, and Mr. Shadwell (presumably Sir Lancelot) was senior counsel for Macaulay. Four years later the case of *Wilmot v. Maccabe,* 4 Sim. 263, was before Sir Lancelot *Shadwell* as vice-chancellor. This was also a bill for discovery in aid of a defence alleging the truth of the libelous matter with which the party was charged in an action at law. The vice-chancellor, referring to *Macaulay v. Shackell,* said: "Lord *Eldon,* and the house of lords on appeal, decided that where a person brings an action for a libel it follows, as commensurate with the right to bring the action, that the party who complains

is bound to give the discovery which the defendant at law claims
to have by his bill." The vice-chancellor must have been familiar
with the decision in the Macaulay case; and if the report of the
case leaves a doubt regarding the decision, the statement of the
vice-chancellor would seem to be sufficient to remove the doubt.
In an earlier case of the same kind (*Thorpe* v. *Macauley*, 5 Mad.
218) the discovery sought was denied on the ground that it would
show that the party had committed a misdemeanor, but the vice-
chancellor, Sir John *Leach*, used the following language in dispos-
ing of the question: " It was next argued that a court of equity
would not lend its aid, either for discovery or commission, to
either party in an action at law proceeding *ex delicto*. . . . No
such limitation of the jurisdiction as to discovery is hinted at in
any book of practice or by the *dictum* of any judge. Courts of
equity exercise a direct jurisdiction in matters of waste and public
nuisance, which are *ex delicto*. I am not therefore prepared to
say that a court of equity will refuse its ordinary aid to the par-
ties in any action at law proceeding for a civil remedy." This
cannot be regarded as authority on the point, but it is worthy of
notice in this connection. Chancellor *Walworth* regarded these
cases as authorities in favor of the right of discovery in actions
for libel unless the discovery would tend to incriminate the party
or render him infamous. *Marsh* v. *Davison*, 9 Pai. Ch. 580, 584,
585, 586.

A *dictum* of Lord *Langdale*, Master of Rolls (who, Lord Camp-
bell, in his Lives of the Lord Chancellors, *vol.* 12, *p.* 351, says " is
without vigor and has not a judicial mind "), in *Glynn* v. *Houston*,
1 Ke. 329, decided in 1836, has added to the doubts regarding
the decision in *Macaulay* v. *Shackell*. The case was a bill for the
discovery of books and documents in aid of an action at law for
an assault and false imprisonment. The discovery was denied on
the ground that it would incriminate the party called on to make
it. The *dictum* referred to is as follows: " I have looked into the
authorities, which tend very much to confirm my opinion that a
bill of discovery cannot be sustained in aid of an action for a mere
personal tort. If it were necessary to expressly decide this point,
I think it is clear what the course of my duty would be; but it is
not here necessary, because a bill of discovery cannot be sustained
in any case where the matter sought to be discovered may be
made the subject of a criminal charge." The defendants say that
this is a decision upon the point, but it is apparent that it is far
from being such. If it had been necessary to decide the point, it
is highly probable that *Macaulay* v. *Shackell* and *Wilmot* v. *Mac-
cabe* would have been noticed and either distinguished, overruled,
or set right. There is no distinction between libel and assault, as

personal torts, which would account for a difference in the application of the doctrine of discovery to them. There are similar *dicta* by *Cockburn*, C. J., in *Pye* v. *Butterfield*, 5 B. & S. 829, 836, and by Lord *Fitzgerald*, in *Lyell* v. *Kennedy*, 8 App. Cas. 217, 233. These *dicta* certainly cannot be regarded as settling the law on the subject. Attention has not been called to any English case in which they have been adopted as the law. The industry of the counsel on both sides in searching for English and American authorities bearing upon the case, manifested by the numerous citations which they have made, justifies a conclusion that no such case exists. Wigram cites *Glynn* v. *Houston* three times, but makes no mention of the point in Lord *Langdale's dictum*. Wig. Dis. 5, 81, 85. Kerr says "it seems" that a bill for discovery will not be entertained in aid of an action for a mere personal tort, citing *Glynn* v. *Houston*. In the next paragraph he says: "It is no objection that the discovery be sought in aid of actions which sound in tort. Bills may also be brought for discovery in aid of or in defence to actions of trespass and trover; and, in general, there seems to be no civil right, the trial of which will not be aided by a bill of discovery." Kerr Dis. 6, 7. Evidently Lord *Langdale's dictum* did not appeal to him as having much weight.

One American case has been cited in which the point was decided in favor of the defendants' contention, *Robinson* v. *Craig*, 16 Ala. 50. The decision was based solely upon *Glynn* v. *Houston* and the absence of authorities the other way. There was no consideration whatever of the principles involved in the question. If the absence of authorities is entitled to any weight, it is under the circumstances very slight. Cases for personal torts arising from the action of the defendant,— willful torts, so to speak,— in which the defendant could make discovery without incriminating himself, must from the nature of the case be very rare. It is possible that there have been none excepting *Macaulay* v. *Shackell*, and cases of like nature that have been decided in accordance therewith without again raising the question. Cases for negligence were not common prior to the middle of the last century. The use of steam and electricity, and the commercial activity consequent thereon, have immensely multiplied cases of this kind. Lord Campbell's act for giving compensation to the families of persons killed by the negligence of others was enacted in 1846. Eight years later a procedure bill was passed, largely through the agency of Lord Campbell (17 & 18 Vict., c. 125), by which, among other things, it was provided that either party to a civil action in the superior courts "shall be at liberty to apply to the court or a judge for a rule or order for the inspection by the jury, or by himself, or by his witnesses, of any real or personal property, the inspection of which

may be material to the proper determination of the question in dispute." *Ib., s.* 58. In speaking of this act, Lord Campbell says : " It brings about, as far as is now practicable, the fusion of law and equity, and establishes the principle on which our jurisprudence must henceforth be moulded, one court for one cause,—— *i. e.*, that the court in which the suit commences shall carry it through all its stages, and finally determine it and everything connected with it. Thus parties will no longer be kept oscillating between law and equity till the subject-matter in controversy is wasted in costs." Lives of the Lord Chancellors, *vol.* 12, *p.* 395. In passing, it may be remarked that if the act and the reason of its enactment do not show that its author understood that courts of equity had jurisdiction to order an inspection of real or personal property when such inspection was material to the proper determination of an issue, it certainly shows that he felt there was a necessity for such inspection in the administration of justice. The act relieved parties from the necessity of resorting to equity for discovery, and reasonably accounts for the absence, in England, of bills of discovery in aid of actions at law for negligence since that time.

" Cases must arise from time to time which are new cases in specie, but which are not new cases with respect to the general principle by which they must be decided." 1 Bli. N. S. 133 ; *Walker* v. *Walker*, 63 N. H. 321 ; *Boody* v. *Watson*, 64 N. H. 162 ; *Gage* v. *Gage*, 66 N. H. 282. If *Macaulay* v. *Shackell* and *Wilmot* v. *Maccabe* are not authorities in favor of the maintenance of the plaintiff's bill, the general principles governing the remedy of discovery certainly justify its maintenance. The case may be a new case in specie, so far as discovery is concerned, but it belongs to a class to which the remedy of discovery is applicable.

It has been suggested that this is a " fishing bill," and should be dismissed for that reason. The plaintiff is not endeavoring to ascertain what defence the defendants contemplate making, nor facts that exclusively relate to the defendants' case, but is seeking discovery of facts that will enable her to prove her case. It is not a fishing bill.

The defendants further say that the statutes of the state removing the disability of parties as witnesses (P. S., *c.* 224, *s.* 13), authorizing the taking of depositions before trial (P. S., *c.* 225), and giving the court authority to order a view at the trial (P. S., *c.* 227, *s.* 19), furnish a full, complete, and adequate remedy at law for obtaining the testimony which the plaintiff seeks, and so ousts the court of its equitable jurisdiction. If these statutes have such effect in cases where the testimony sought may be obtained under them, which is doubtful (*Wheeler* v. *Wadleigh*, 37

N. H. 55; *Howell* v. *Ashmore,* 1 Stock. 82; *Shotwell* v. *Smith,* 20 N. J. Eq. 79; *Union etc. R'y* v. *Baltimore,* 71 Md. 238; *Russell* v. *Dickeschied,* 24 W. Va. 61, 68; *Lovell* v. *Galloway,* 17 Beav. 1; 1 Sto. Eq. Jur., s. 64), it does not appear that the plaintiff could obtain by virtue of them an inspection of the broken strap prior to the trial. The size and character of the strap are not stated, but it is reasonably certain that a *subpœna duces tecum* would be powerless to cause its production at the taking of depositions. A view of it at the trial would not answer the requirements of justice, according to the allegations of the bill.

The demurrer should be overruled.

*Exception sustained.*

All concurred.