ARKANSAS SMOKELESS COAL COMPANY *v.* PIPPINS.

Opinion delivered October 25, 1909.

1. MASTER AND SERVANT—FURNISHING VICIOUS ANIMAL TO WORK.—If a master furnishes for his servant's use an animal of such a vicious nature that the servant is liable to be injured, the master will be liable for his injuries if he knew, or in the exercise of ordinary care should have known, of the vicious propensities of the animal, unless the servant knows that the animal is dangerous and continues to use it, in which case he assumes the risk of injury from it.  (Page 141.)

2. SAME—HOW MASTER'S KNOWLEDGE OF ANIMAL'S VICIOUS NATURE PROVED. —A corporation employing plaintiff and furnishing a vicious mule for him to use is not liable if the only proof of the master's knowledge of the animal's viciousness consisted in the testimony of one of his employees from which the jury might have inferred that the mule was vicious, if such employee is not shown to have been the keeper of the mule or to have been in such position that his knowledge was attributable to the master.  (Page 141.)

3. SAME—PROXIMATE CAUSE.—Where an employee, engaged in driving a mule car in a coal mine, was kicked from the car by the mule and thrown against the walls of a narrow entry and crushed, the fact that the master built the entry walls narrow was not the proximate cause of the employee's injuries, as it could not reasonably be anticipated by the master that employees would be injured by being kicked or falling between the cars and the walls of the entry.  (Page 142.)

4. SAME—DUTY AS TO APPLIANCES.—A master is not bound to furnish absolutely safe appliances, but only to exercise reasonable care to furnish such appliances as are suitable for the purposes for which they are intended, and to exercise ordinary care to see that they are kept in such condition.  (Page 143.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

J. J. Pippins instituted this action to recover damages for personal injuries of a permanent nature, sustained by him while

in the service of the Smokeless Coal Company, in consequence of the alleged negligence of the defendant company.

J. J. Pippins was employed by the coal company on the 14th day of January, 1908. He first worked for the defendant company as a digger of coal. Then he was put to work as a driver. When the coal is mined, it is hauled on a small car on a track. The tracks lead from the room into the entry, and from there to what is called the parting. The cars are carried along the track just as coal cars are carried on a railroad track, the motive power being a mule. It is the duty of the driver to hitch the mule to the car or cars and drive to the parting, where the cars are hoisted from the mine. He then unhitches the mule from the loaded cars, and hitches him to empty cars to carry back to the room. It is a part of his duty to "sprag" the cars. This consists in putting iron or wooden stakes about one and one-half feet long between the spokes of the wheel and the body of the car to check the speed of the car, while going down grade. In other words, spragging is the act of applying brakes to the coal cars. On the day Pippins was injured, he had been engaged in driving for about two hours, and was making his third trip. The mule was hauling two cars, and Pippins was seated on the front end next to the mule. The cars were going down a steep grade in the west third entry or passageway. Pippins looked to see if his "buddy" was behind him. He then looked around at the mule. Being afraid that the cars would run on the mule, he hallooed at him. When he did this, the mule kicked him with both feet, knocking him off the car and between it and the walls of the entry. The wall of the entry was about one foot from the car track. Pippins's body was so badly crushed that the lower part of it became wholly paralyzed. His physician says that he will never be able to do any kind of physical work, and will not likely live many years longer. Pippins was 34 years old at the time he was injured. He predicates his right of recovery on the alleged negligence of the coal company in furnishing him with a vicious mule to work and in the defective conditions of the entry.

Pippins recovered judgment against the coal company for $2,000, and the case is here on appeal.

*Jesse A. Harp* and *George W. Dodd,* for appellant.

1. The evidence does not sustain the verdict. Aside from the fact that the mule kicked appellee, there is no evidence that it was a vicious, dangerous animal, and especially no such knowledge brought home to the appellant or which by the exercise of ordinary care could have been known.

2. Where, in an occupation involving risk to the employee, two ways of performing a duty to the master is presented, one of which is safe and the other is hazardous, if the employee, being a man of mature years and experience in the work, choose the hazardous way, he assumes the risk. It is also the law that where one has sufficient knowledge and intelligence to see and appreciate the dangers incident to his occupying a particular place set apart for him by the master, and knowingly assents to taking such position, he assumes the risk. 56 Ark. 232; 81 Ark. 343; 41 Ark. 542; 54 Ark. 389; 56 Ark. 206; 57 Ark. 76; 80 Wis. 350; 1 Labatt, Master & Servant, § 266 *et seq.* It is not shown that it was *necessary* for the driver to occupy the front of the car, and the fact that he could "sprag" the car from that end with less trouble than from the rear, where he could have ridden in safety, does not detract from his duty to select the safer position. 20 Am. & Eng. Enc. of L., 146.

3. If, seeing and knowing the condition of the entry, appellant voluntarily accepted the employment as driver therein, he assumed the risk incident to such condition of the entry. 48 Ark. 333. The court erred in holding that the condition of the entry was the proximate cause of the injury, and testimony as to its condition was inadmissible and prejudicial. 21 Am. & Eng. Enc. of L., 2d Ed. 485; 29 Cyc. 488; 2 Labatt on Master & Servant, § 803. It must appear that the particular neglect in question was the proximate cause of the injury. 21 Am. & Eng. Enc. of L., 2d Ed., 483; *Id.* 484-5.

4. Where the possibility of a particular occurrence is demonstrated only by its happening, there is no liability in negligence. 21 Am. & Eng. Enc. of L., 2d Ed. 400. Where an appliance has been used for a considerable length of time, and been found to answer the purpose for which it was intended, it is not negligence to continue its use. 56 N. Y. 656; 38 Am. Rep. 533; 106 N. Y. 136; 47 Hun (N. Y.) 562; 81 Hun (N. Y.) 544; 4 Am. St. Rep. 613.

5. The greater part of the miners were diggers, not mule drivers. Very few, in fact, were of the latter class. Testimony as to the general reputation of the mule for viciousness was mere hearsay and incompetent.

*A. J. Koenigstein,* for appellee.

Knowledge of the unsafe condition of the entry and of the vicious propensities of the mule is brought home to the master in this case, as appears by the evidence, which is a question of fact settled by the jury's verdict. 68 Ark. 314; 75 Ark. 52; 68 Ark. 134. And appellant has failed to meet the burden of showing contributory negligence.

HART, J., (after stating the facts). Counsel for appellant insist that the court erred in not directing a verdict in favor of appellant. The law in regard to the negligence of the master in furnishing his servant with a vicious animal to work stands on the same footing as furnishing him a dangerous appliance. The rule is aptly stated by Mr. Thompson as follows: "But if a master furnishes for the use of the servant a horse or other animal of such a vicious nature that the servant is liable to be injured in consequence of its viciousness, the master will be liable if he knew, or by the exercise of ordinary care could have known, of the vicious propensities of the animal, unless the servant knew that the animal is dangerous, but nevertheless continues to use it, in which case he assumes the risk of injury from it." 4 Thompson on Negligence, § 4041. To the same effect, see 26 Cyc. 113, and cases cited in note 80; 1 Labatt on Master & Servant, § 206.

In the case at bar there was sufficient evidence adduced at the trial on the part of the appellee from which the jury might infer that the animal was of a vicious nature, and that that fact was not known to appellee; but there is no evidence which would warrant the jury in finding that the coal company knew that the mule was vicious, or by the exercise of ordinary care could have known it. All the employees of the company who testified on the subject, except one, said that the mule was not vicious. One of the employees testified as above stated to facts from which the jury might have inferred that the mule was vicious, but he was not shown to have been the keeper of the mule, or to have been in such position that it could be said that his knowledge was the master's knowledge.

2. On the question of the defective condition of the entry, we are of the opinion that under the facts disclosed by the record the appellee is not entitled to recover, and that this case in that respect is controlled by the principles announced in the case of *St. Louis, & San Francisco Rd. Co.* v. *Hill,* 79 Ark. 76. In that case a train was passing over a bridge of the railroad company, and the bridge gave way and wrecked the train. A brakeman on the train was killed. The engine was derailed before it reached the bridge, and there was evidence tending to show that the bridge was sufficient to sustain the train, had it remained upon the track, and that the derailment of the train caused the the bridge to give way. The court said: "The bridge in question was constructed solely for the passage of defendant's trains on the track over Crowder Creek. There was evidence tending to prove that it was sufficient for that purpose. There is no evidence to show, and plaintiff does not contend, that the derailment of the train was owing to defects of the bridge. That being true, the derailment did not prove that the defendant was negligent in the construction or maintenance of the same."

So, in the case at bar it may be said that the entry was sufficiently wide to permit the passage in safety of the mine cars, and it could not be reasonably anticipated by the coal company that its employees would be injured by being kicked or otherwise falling between its cars and the walls of the entry.

The case at bar does not come within the rule announced in *McNamara* v. *Logan,* 100 Ala. 187, 14 So. 175. There the servant was injured while engaged in spragging the cars. The testimony showed that it was his duty to walk along beside the cars and to sprag them when they started down a steep grade. The entry was too narrow for that purpose at the place where the servant was injured while engaged in the performance of his duties of spragging or blocking the cars, and the court held that, the evidence being in conflict as to whether the entry was dangerously narrow, or the cars dangerously near the wall at that point, the question of negligence was for the jury. In the present case, there was no testimony to show that it was the duty of the driver to alight from the cars to sprag them. On the contrary, the uncontradicted testimony shows that the drivers always rode on the cars while engaged in the performance of their duties.

Under the testimony in the case at bar there was no necessity for sufficient room betweeen the sides of the car and the walls of the entry for the use of the driver in spragging, and consequently there was no defect in the condition of the entry where the injury occurred. A master is not bound to furnish absolutely safe appliances, but only to exercise reasonable care to furnish such appliances as are suitable for the purposes for which they are intended, and to exercise ordinary care to see that they are kept in such condition.

There is no presumption of negligence in a case like this. The burden of showing that the appellant was negligent in regard to the matters alleged in appellee's complaint was upon him. Having failed to establish negligence in regard to either of the allegations of his complaint, the verdict of the jury is without evidence to support it.

Therefore the judgment must be reversed, and the cause remanded for a new trial.