. **A. L. ROBB, Appellant,**

v.

**Mary GILMORE, Individually, and as Next Friend for Len Gilmore, et al., Appellee.**

**No. 15814.**

.

Court of Civil Appeals of Texas.

Fort Worth.

May 3, 1957.

Rehearing Denied June 7, 1957.

John McKelvey, Electra, Bullington, Humphrey, Humphrey & Fillmore, and John Murphy, Wichita Falls, for appellant.

Abner V. McCall, Waco, Mock & Spell, and C. Coit Mock, Wichita Falls, for appellee.

BOYD, Justice.

Appellee Mary Gilmore, individually, and as next friend for her minor children, Len and Darlene Gilmore, recovered judgment against appellant A. L. Robb for $57,290.25, as damages for the injuries and death of Ned Gilmore, husband of Mary Gilmore and father of the minor children; hence this appeal.

Deceased began working for appellant as a ranch hand on the morning of March 10, 1956, and was instructed by appellant's ranch foreman to ride a certain black mare to assist in rounding up cattle; about twenty minutes after deceased began riding the mare the animal fell and the fall caused injuries to deceased from which he died.

Appellee alleged that: appellant negligently furnished deceased the mare for the purpose of riding her to round up cattle; the mare was totally unfit for that purpose and appellant knew, or in the exercise of ordinary care should have known, that she was unfit for such use; deceased was not warned as to the nature and unfitness of the animal, and he received injuries while riding the animal of which he died; his death was due to the negligence of appellant; said mare was unfit because prior to the occasion in question she had been afflicted with a disease known as fistula, and as a result of said disease and an operation therefor, the muscles, ligaments, tendons and bones in her front legs, shoulders, withers, back and upper spine had been damaged, partially removed, stiffened, abscessed, weakened and covered with scar tissue to the extent that she had lost the full use of those portions of her body, causing her to have a tendency to stumble and fall as she did on the occasion in question; she had not been properly trained for the work she was furnished to do; she was strong-willed, stubborn, and had an inclination to return to the barn; she was unfit because her left front foot and leg had been severely lacerated, cut and torn prior to the occasion in question, leaving the muscles, tendons and ligaments in that area stiff and unwieldy, causing her to have a tendency to stumble and fall as she did on the occasion in question; she was unfit because of all and/or a combination of said physical and temperamental defects; appellant and his employees were negligent in furnishing said animal in her condition and in failing to warn deceased of such dangers and unfitness; and such acts of negligence were, collectively and separately, proximate causes of the injuries and death of Ned Gilmore.

Appellant denied that he was guilty of negligence and alleged that the animal was, so far as he knew, sound in body and limb, and trained for working cattle, and that he had no reason to anticipate that deceased would be injured in the performance of the customary duties of his employment; he further pleaded contributory negligence and assumed risk.

The jury found that: a prior fistula condition rendered the animal unfit for rounding up cattle; the furnishing of the mare in such unfit condition was negligence, and a proximate cause of the injuries and death of Ned Gilmore; the failure of appellant to warn deceased of the mare's unfitness was negligence, and a proximate cause; the mare had not been properly trained for the work she was furnished to do, and furnishing her to deceased without such proper training was negligence, but was not a proximate cause; that failure of appellant to warn deceased that the mare was not properly trained was negligence, but was not a proximate cause; the mare was not lame; she was stiff, and appellant or his

foreman, either or both, should in the exercise of ordinary care have known of such stiffness; deceased did not assume the risk of injury by riding the mare; the mare had not recovered from the effects of fistula; appellant and his foreman, either or both, in the exercise of ordinary care, should have known that the mare had not recovered.

By his first group of points appellant assigns error to the action of the court in ordering him to produce the animal for examination, photographing, and testing by appellee. By such order the court directed appellant to deliver the mare to appellee for examination by a veterinarian of her choice, the details of such examination to include everything which in the opinion of the veterinarian was necessary to enable him to form an opinion of the physical condition of the animal. Appellant was ordered not to interfere with the examination.

The examination was made more than six months after the accident. A rider was selected by appellee, who rode the mare at the direction of the veterinarian, putting her "through her paces" by walking, running, turning, and stopping her.

Appellant contends that the order was unauthorized under the rules of procedure and the constitution and laws of the state; that it allowed an illegal invasion of his property rights; that it deprived him of the possession, control, and use of his property without compensation; that the scope of the examination was not limited by the court; that it required the animal to perform physical feats with the only limitation being the imagination of the rider selected by appellee; that it compelled appellant to give evidence against himself; that there was no guarantee that appellant's property would be returned to him in the same condition it was in when taken; that good cause for such order was not shown; and that the court refused to require appellee to post bond to indemnify appellant should he suffer any loss as a result of such examination. It is appellant's further contention that any evidence obtained by appellee by such examination was inadmissible on the trial of the case.

After the accident in question, appellant had the animal examined by veterinarians and ridden by expert horsemen; upon being requested by appellee for the privilege of making an examination by a veterinarian of her choice, appellant refused.

We are of the opinion that reversible error is not shown by this group of points.

■ Evidence of the physical condition of the animal at the time of the accident was of vital importance. In his deposition appellant admitted that the mare had fistula in her left shoulder in 1950 and had undergone an operation for that disease. Appellee having alleged the animal was unfit for the purpose for which she was furnished, and that the disease and operation therefor had damaged her shoulder, muscles, ligaments, and tendons, causing her to lose the full use of her foreleg and to have a tendency to stumble, and that her left front foot and leg had been severely lacerated, which caused that area to be stiff and unwieldy, it was incumbent upon appellee to prove those allegations. It is not doubted that the evidence obtained by the examination was material to appellee's case and without it she would have been at a decided disadvantage.

"To 'establish justice' is one of the objects of all social organizations, * * * and, if, to determine the exact measure of the rights of parties, it is necessary that a temporary invasion of the possession of either for purposes of inspection be had, surely the lesser evil of a temporary invasion of one's possession should yield to the higher good of establishing justice; * * *." Montana Co. v. St. Louis Mining & Milling Co., 152 U.S. 160, 14 S.Ct. 506, 508, 38 L.Ed. 398. In Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, the court upheld an order directing surveyors to go upon lands held by the de-

fendant under an oil lease, and which adjoined the plaintiff's lease, and to use the defendant's machinery to make a survey in order to determine if the defendant had drilled into land below the plaintiff's surface. See, also, Reynolds v. Burgess Sulphite Fibre Co., 71 N.H. 332, 51 A. 1075, 57 L.R.A. 949; 17 Am.Jur., p. 16, sec. 21, and p. 17, sec. 23; Wigmore on Evidence, Vol. VI, sec. 1862, pp. 479–487; De Vito v. New York Central Railroad Company, Sup., 146 N.Y.S.2d 545; Annotations, 33 A.L.R. at pages 16–24; 13 A.L.R.2d at pages 657–663; Rules 167 and 737, Texas Rules of Civil Procedure; Fed.Rules Civ.Proc. rule 34, 28 U.S.C.A.

■ It has been held that whether good cause is shown for such an order and the method and scope of the examination to be made thereunder are in large measure in the discretion of the trial court. Meier Glass Co. v. Anchor Hocking Glass Corp., D.C., 11 F.R.D. 487. We do not think the court's action in ordering the production of the animal for examination requires a reversal of the judgment.

We know of no rule which renders inadmissible the evidence obtained by the examination of the animal under the order of the court. The length of time elapsing between the accident and the examination might affect its weight, but not its admissibility.

■ Points of error are predicated on the overruling of appellant's motion for instructed verdict at the close of appellee's case, and his motion at the close of all the evidence. Having chosen to put on his case rather than to stand on the record when appellee rested, we think appellant waived the error, if any, in refusing the first motion. 41–B Tex.Jur., p. 213, sec. 184. Therefore, the only matter left for determination in this regard is his point that it was error to overrule his motion at the close of all the evidence.

■ A master's duty in furnishing a horse or other animate thing to a servant for doing the master's work stands upon the same basis as furnishing tools or other inanimate instrumentalities. Warner v. Oriel Glass Co., 319 Mo. 1196, 8 S.W.2d 846, 60 A.L.R. 448; George H. Hammond Co. v. Johnson, 38 Neb. 244, 56 N.W. 967; Central Lumber Co. v. Porter, 139 Miss. 66, 103 So. 506, 42 A.L.R. 221; Arkansas Smokeless Coal Co. v. Pippins, 92 Ark. 138, 122 S.W. 113. The master is bound to use reasonable diligence to furnish a safe animal, and he is bound by what he actually knew or by the exercise of reasonable diligence might have known. Marks v. Columbia County Lumber Co., 77 Or. 22, 149 P. 1041.

"To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of an injury. There must be some substantive proof of the negligence. Knowledge of the defect or some omission of duty in regard to it must be shown." Looney v. Metropolitan R. Co., 200 U.S. 480, 26 S.Ct. 303, 305, 50 L.Ed. 564. "Neither the existence of a legal duty nor a breach thereof can be presumed, but must be proved." Railway Express Agency v. Robinson, Tex. Civ.App., 162 S.W.2d 984, 987.

■ Whether negligence exists is ordinarily a question of fact. It is only when reasonable minds must reach the same conclusion that it is a question of law. 30–B Tex.Jur., p. 415, sec. 160, and note 16; 38 Am.Jur., p. 1041, sec. 344; 65 C.J.S. Negligence § 251, p. 1115.

■■ Appellee alleged and had the burden of showing that the animal was defective; that appellant or his foreman knew, or in the exercise of ordinary care should have known, of the defective condition; and that the defective condition was a proximate cause of deceased's injuries. Whether the evidence was sufficient to take the case to the jury has given us concern; but, after a careful study of the record, we are of the opinion that the points raising that question must be overruled.

According to Dr. Burrus, the veterinarian who examined the animal under the court order, there was a ten inch scar on her left shoulder, indicating that she had undergone a serious operation for fistula; muscle and nerve tissue had been removed and had been replaced by scar tissue, which prevented free movement of the shoulder muscles and impaired the horse's movements; the shoulder ligament was drawn, and the left foreleg was stiff; when moving she did not lift her left foot as high as the right nor thrust it forward like the right; she swung the left foot inward in a circle and her foot barely cleared the ground; she had a tendency to stumble and stumbled four times while being ridden during the examination; she was unfit and dangerous to ride in working cattle; she was unfit as a cow horse; the condition had existed since the operation in 1950. The examination was made September 20, 1956.

Collier, who rode the mare in Dr. Burrus' examination, said he could tell from his experience as a horseman that there was stiffness in her left shoulder which caused her to swing her left front foot; she stumbled three or four times while he was riding her; she was dangerous to ride in working cattle.

. Dr. Roberts, a veterinarian, examined the mare at appellant's request, and said he noticed that she had had a severe fistula; she did not pick up her feet properly while running; she swung her left foot out; there would be more than usual danger of her stumbling if she ran "hard"; she "misstepped" twice while running straight; she was unfit for ranch work.

The father of deceased testified that shortly after his son's death he and Morris tried to catch the mare; she started to run and stumbled and fell to her knees, and her nose hit the ground; this was in an open pasture.

Morris testified about her falling, and said that in moving about she swung her left leg and did not carry it forward.

A photographer who made films which were shown to the jury testified that the films showed that the mare "threw" her left front foot and the stride with her left leg was shorter than with the right.

Lee, who was riding in the pasture with deceased when the mare fell, testified that she fell forward and threw deceased to the left and rolled onto him.

Appellant testified that: the ground was packed where the mare fell, and there were no wires, holes, or anything unusual which would cause a horse to fall; the mare was operated for fistula in the summer of 1950, and that the scar healed in 1950; the mare was about ten years old, was foaled on his ranch, and had been there all her life; he had seen her ridden on many occasions, but never saw her stumble, fall or limp; until this suit was filed, he had never heard that she stumbled, fell, limped, or had a defect; when the mare was first ridden, and before the fistula condition, Allen told him that the mare "didn't want to go."

Dr. Riddle, a veterinarian, testified that after the accident he examined and rode the mare and found no evidence of unsoundness.

Dr. Duwe, also a veterinarian, testified that after the accident he rode the mare, and saw others riding her, and saw no indication of lameness or stiffness; he did not see her stumble or fall, and did not see anything to indicate that she was unsound.

Huey, an experienced horseman, rode the mare and put her "through her paces," and could find nothing wrong with her.

Lewis testified that: he had ridden the mare occasionally to work cattle for the last five or six years, and she never stumbled, fell or showed any sign of lameness or stiffness; there was nothing to indicate that she would be dangerous to ride in working cattle; he rode her about three times per month.

Hinkle testified that he was an experienced horseman, and had walked, trotted,

run, whirled, and turned the mare sharply on rough ground, and she did not stumble, fall, or limp, and he could find nothing wrong with her.

Cansler, another experienced horseman, said he had ridden the animal several times as hard as he could and turned her sharply both ways, stopped her abruptly, and tried to make her stumble, but he could not get her to stumble, bobble or act like she wanted to fall.

Ancell, also an experienced cow hand, said he could find nothing wrong with the mare and did not see anything which would show that she was dangerous to ride.

Deaton said: he had seen her ridden by two riders who did about everything that could be done on a horse, including running, twisting, backing, running against a fence, into sand piles, and over big tumble weeds, and she did not limp or make a "break" of any kind; she was sound of limb and had no stiffness or lameness; the best horses in the world would stumble, and any horse would fall.

Appellant's foreman testified that when the animal fell with deceased she was running "full tilt"; he had known the mare for nine years and had ridden her and seen her ridden; he did not know anything to warn deceased about; he could not see that she was suffering from impairment of any kind; he at one time saw her "stump her toe."

Where the evidence is equally consistent with the nonexistence of negligence proximately causing an injury as with its existence, the plaintiff's case is not proved. The case is made, however, when the evidence is sufficient to justify, though it be not strong enough to compel, a finding of negligence and proximate cause. So long as there is a question whether the defendant has performed his legal duty of exercising ordinary care, and whether his failure so to perform, if any, proximately caused the injury, the issue is for the jury. 65 C.J.S. Negligence § 243, p. 1074; 38 Am.Jur., p. 1050, sec. 345.

In Henry v. Publix Theatres Corporation, Tex.Civ.App., 25 S.W.2d 695, error refused, suit was for damages for injuries sustained by a patron of a theatre when, while sitting on a seat on the lower floor, she was struck by the body of a patron who fell from the balcony. It was shown that the aisle between the balcony seats and railing was only 17 inches wide, and the railing only 29 inches high, and it was alleged that the operator of the theatre was negligent in not maintaining a higher railing where the aisle was so narrow, and that such negligence was the proximate cause. It was held that the evidence was sufficient to take the case to the jury, although it was not shown what caused the person to fall.

We think it was for the jury to determine whether appellant negligently breached any duty owing to deceased, and, if so, whether such negligence proximately caused deceased's injuries.

Error is assigned to the refusal of several issues in the form as requested; they were, however, submitted substantially as requested, and we see no error in this regard.

Other issues the refusal of which is complained of inquired whether certain acts and omissions of deceased were contributing causes of the accident. Since issues were given as to whether such acts and omissions were proximate causes, the refusal of those issues was not error. Dulaney Inv. Co. v. Wood, Tex.Civ.App., 142 S.W.2d 379.

Appellant requested the following issue, which was refused: "Do you find from a preponderance of the evidence that the black mare, on the time and occasion in question did not fall other than from natural causes?" We regret our inability to appraise the issue. We do not know what is meant by "natural causes." Appellant's exact point is that "having pled affirmatively that the mare fell from natural causes, the trial court erred in refusing to give appellant's requested issue on such theory." We fail to find any allegation that the mare

fell from natural causes. But appellant did allege that she was, so far as he knew, sound in body and limb. Whether she was sound in body and limb was submitted to the jury. We do not perceive any error reflected by this point.

Another point is that it was error to submit the issue on assumed risk, with the definition appended. The issue and definition were: "Do you find from a preponderance of the evidence that Ned Gilmore assumed the risk, if any, as that term is hereinafter defined, of injury by riding the mare which was unfit, if you have found that she was unfit, on the occasion in question? You are instructed that by the term 'assumed risk' is meant that an employee, by the exercise of his free will and intelligent choice, has put himself in the way of a danger, which he knew or comprehended, or was so obvious that he must be taken to have known or comprehended it." The answer was in the negative.

■ Appellant says that the issue was multifarious, on the weight of the evidence, in the nature of a general charge, and permitted the jury to speculate; and that the definition placed a greater burden on appellant than the law provides. We do not think the issue is subject to the criticisms. It did not assume that the mare was unfit. Issues as to her alleged unfitness had already been submitted; and there was no objection that the court did not specifically, in a separate instruction, submit the question conditionally. Appellant agrees that deceased did not assume any risks incident to appellant's negligence; and he insists that there was no evidence that deceased had any knowledge that the animal was suffering from any unfit condition. It would seem, then, that the defense of assumed risk was not in the case.

■ There is another point that appellee was allowed to prove the pecuniary circumstances of appellant in that it was shown that he was a large landowner, was in the telephone business, and was a director in the Electra State Bank. That he was in the telephone business was first proved by appellant himself. Later, in answer to a question by appellee as to his occupation, appellant said, " * * * I'm in the telephone business. * * * not very active in the business. * * * I look after my farms and ranch out there." After several other questions and answers, appellant objected to the testimony as being prejudicial. Appellant objected to having to testify that he was director in the Electra State Bank. Appellant's witness Huey testified that he did his banking business with that bank. Appellant's witness Ancell testified that he had $10,000 deposited with that bank. If evidence of appellant's connection with the bank was not admissible to show the witnesses' relationship to him, we think its admission was harmless error. Rules 434 and 503, T.R.C.P.

■ Error is alleged in the refusal of a new trial on the ground of jury misconduct in that the jurors discussed and considered insurance. Several jurors testified that there was no discussion as to whether appellant had insurance. The juror Abbott, who was in the insurance business, testified that he saw an insurance adjuster in and around the courtroom, and at a recess and before the juror had been selected, he asked the adjuster if he had insurance on the case. The question was not answered; but the juror supposed that appellant had insurance. The court found that insurance was not discussed and that no misconduct occurred, and the evidence supports the finding.

All of appellant's points have been considered, but we think reversible error is not reflected.

The judgment is affirmed.